UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re                                              :    Chapter 11
                                                   :
CORECOMM NEW YORK, INC., et al.,                   :    Case No. 04-10214 (PCB)
                                                   :
          Debtors.                                 :    (Jointly Administered)
------------------------------------------------------x

## JUDGMENT AND ORDER CONFIRMING DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Upon the Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated as of March 1, 2005 (as may be modified and/or amended, the "Plan"), which Plan was proposed and filed with this Court by the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"); and upon the Disclosure Statement for Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated as of March 1, 2005 (as may be modified and/or amended, the "Disclosure Statement"), which Disclosure Statement was proposed and filed with this Court by the Debtors; and upon (a) the hearing(s) held before this Court on February 23, 2005 and February 28, 2005, to consider approval of the Disclosure Statement and to establish certain voting procedures concerning the solicitation of votes in connection with the Plan (the "Disclosure Statement Hearing"), (b) the order dated February 28, 2005 (i) approving the Disclosure Statement and (ii) establishing certain solicitation and confirmation process procedures, approving forms of ballots and authorizing the Debtors to solicit votes on the Plan (the "Disclosure Statement Order"); and upon the affidavit of Stephen Marotta, Chief Restructuring Officer of the Debtors, sworn to on April 8, 2005 and filed with the Court on April 11, 2005 (the "Affidavit in Support"), the certification of Stephen Marotta, Chief Restructuring Officer of the Debtors, sworn to on April 8, 2005 and filed with the Court on April

11, 2005 (the "Voting Certification"), and the declaration of Ronald Howard of Donlin, Recano and Company, Inc. ("DRC"), the voting agent retained by the Debtors, sworn to on April 8, 2005 and filed with the Court on April 11, 2005 (the "Balloting Tabulation"); and the Disclosure Statement (with a copy of the Plan attached thereto as Exhibit A), the Confirmation Hearing Notice (as defined in the Disclosure Statement Order), the Letter of Support of the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, the Notice Regarding Tariff Services and a ballot or master ballot and related materials (collectively, the "Solicitation Materials") having been transmitted to all known holders of claims entitled to vote substantially in accordance with the Disclosure Statement Order; and the Disclosure Statement Order having fixed April 4, 2005, at 4:00 p.m. (prevailing New York City time) as the last day and time for filing of objections to confirmation of the Plan; and the solicitation of acceptances from holders of claims having been made substantially within the time and in manner set forth in the Disclosure Statement Order; and upon the affidavits of service filed with respect to the mailing of the Solicitation Materials; and upon the objections to confirmation of the Plan filed by the Manicopa County ("Maricopa"), the New York State Department of Taxation and Finance (the "NYS DOT") and the Pennsylvania Department of Revenue (the "PA DOR") (collectively, the "Objections"); and no other objections having been filed with the Court; and upon the Modifications (as defined below) to the Plan proposed by the Debtors on April 11, 2005; and upon the Debtors' Memorandum Supporting Confirmation of the Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated April 11, 2005, filed by the Debtors (the "Memorandum In Support"); and a hearing to consider confirmation of the Plan having been held before this Court on April 13, 2005 (the "Confirmation Hearing"); and upon the Court's Findings of Fact in Connection with Confirmation of the Debtors' Second

Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "<u>Findings of Fact</u>"); and upon the full and complete record of the Confirmation Hearing and all matters and proceedings heretofore part of the record of these cases; and after due deliberation and sufficient cause appearing therefor,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.  All defined terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

2.  The Debtors' motion for approval of the Modifications to the Plan, made in the Plan Modification Motion and/or stated on the record at the Confirmation Hearing, is granted, and the Plan, as modified by the Modifications, shall constitute the Plan approved hereby. Without limiting any findings of fact in connection with the confirmation of the Plan, the terms of the Plan, as modified, are an integral part of this Order and are incorporated herein by reference and "So Ordered" in their entirety. The terms of the Plan Documents also are incorporated herein by reference and are an integral part of the Plan and this Order.

3.  To the extent that any Objections to confirmation of the Plan have not been withdrawn prior to entry of this Order, are not cured by the relief granted herein or resolved as stated by the Debtors in the Memorandum in Support and/or on the record of the Confirmation Hearing, all such Objections shall be, and hereby are, overruled. As indicated in the Memorandum in Support, the filed Objections have been resolved as follows:

   (a) <u>Maricopa County Objection</u>: Maricopa shall be granted a Secured Tax Claim in the amount of $861.30, payable in cash on the Effective Date of the Plan.

   (b) <u>NYS DOT</u>: The Reorganized Debtors shall (i) pay interest on the allowed amount of NYS DOT's Priority Tax Claim or Secured Tax Claim, as the case may be, over six years at 9%, and (ii) make quarterly, as opposed to annual, periodic payments on any such allowed claim. In addition, notwithstanding any language in the Plan or this Order to the contrary, the

      Plan in no way compromises the rights, if any, of either the Commonwealth of Pennsylvania, Department of Revenue, or the New York State Department of Taxation and Finance, against the Debtors' corporate officers to seek recovery of state trust funds to the extent provided by applicable law.

  (c)  PA DOR: The Debtors shall make quarterly, as opposed to annual, periodic payments in respect of any Allowed Priority Tax Claims and/or Secured Tax Claims agreed to by the Debtors and the Pennsylvania Department of Revenue. In addition, notwithstanding any language in the Plan or this Order to the contrary, the Plan in no way compromises the rights, if any, of either the Commonwealth of Pennsylvania, Department of Revenue, or the New York State Department of Taxation and Finance, against the Debtors' corporate officers to seek recovery of state trust funds to the extent provided by applicable law.

  4.  The conclusions of law stated herein shall constitute conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014. To the extent any conclusion of law may be determined to be a finding of fact, it shall be so deemed.

  5.  The Plan complies with the requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code.

  6.  The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the ballots solely for the purposes of voting to accept or reject the Plan, (b) do not represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, and (c) shall not be binding on the Debtors or the Reorganized Debtors.

  7.  The Plan is hereby confirmed pursuant to section 1129 of the Bankruptcy Code.

  8.  The Debtors and the Reorganized Debtors, and such appropriate officers,

members, managers, and directors of the Debtors and the Reorganized Debtors, including, but not limited to, David Larsen, Jeff Coursen, Neil Peritz and Stephen Marotta (collectively, the "Authorized Officers"), are authorized and empowered to execute, deliver and/or file such documents, and make such payments, as are necessary to consummate the Plan. All actions contemplated by the Plan hereby are authorized and approved in all respects (subject to the provisions of the Plan and this Order). All such actions, and any other actions described in the Plan, the Plan Documents or this Order that otherwise would require the consent or approval of the directors, members or shareholders of the Debtors or the Reorganized Debtors shall be deemed to have been consented to or approved and shall be effective under applicable foreign law, state law and the Bankruptcy Code, without any requirement of prior or further action by the shareholders, members or directors of the Debtors and/or the Reorganized Debtors. The appropriate officers, managers, members, and directors of the Debtors and/or the Reorganized Debtors (including, but not limited to, the Authorized Officers) are authorized to execute and deliver and to perform the terms of the agreements, documents and instruments contemplated by the Plan and the Disclosure Statement in the name of and on behalf of the Debtors and/or the Reorganized Debtors.

        9.     The boards of directors or managers of each of the Reorganized Debtors shall be deemed to have been duly elected by the shareholders or members, as the case may be, of each such Reorganized Debtor and the following individuals shall constitute the initial board of directors of Reorganized ATX: Joseph S. Steinberg, Ian M. Cumming, David Larsen and Thomas Gravina. Such directors shall remain in office until their successors are duly elected and qualified, or until their earlier resignation, removal or death, subject to the applicable laws of the State of Delaware, the terms of the Plan and the Reorganized ATX Certificate of Incorporation

and Reorganized ATX By-laws. Following the occurrence of the Effective Date, the initial board of directors of Reorganized ATX may be replaced by such individuals as are selected and elected by the holders of New Common Stock in accordance with the Reorganized ATX Certificate of Incorporation and Delaware law. Except as otherwise described in Section 11.02(b) of the Plan and as otherwise disclosed not later than ten (10) days prior to the Confirmation Hearing, the officers of the Reorganized Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date.

        10.      The Management Transition Arrangements are approved and the Reorganized Debtors are hereby ordered and directed to comply with any and all provisions and terms set forth therein.

        11.      Subject to the provisions of the Plan, the Plan Documents and this Order, the Debtors, as the Reorganized Debtors, shall continue to exist on and after the Effective Date, having all of the powers of a company under applicable law and without prejudice to any right of the Reorganized Debtors to alter or terminate its existence (whether by merger or otherwise) as provided by, and in conformity with, applicable law.

        12.      If the Plan becomes effective as set forth in Section 13.01 of the Plan, pursuant to Section 12.03 of the Plan and sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' estates shall vest in the Reorganized Debtors, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan or in this Order. For the avoidance of doubt, (a) the liens granted to Verizon pursuant to the Verizon Adequate Assurance Stipulation shall continue to exist, shall continue to have the same priority, and shall continue to be deemed fully perfected without any need for Verizon to file any UCC

financing statements or take any other action, following the Effective Date to secure the Debtors' and Reorganized Debtors' payment obligations, pursuant and subject to the terms of the Verizon Settlement Agreement and the Verizon Adequate Assurance Stipulation, unless and until Verizon agrees otherwise or the Debtors or Reorganized Debtors, as the case may be, post the Letters of Credit (as defined in the Exit Facility) as contemplated by the Verizon Settlement Agreement (with Verizon's liens preserved hereunder being deemed simultaneously released upon the posting of such Letters of Credit), and (b) the liens granted to SBC pursuant to the SBC Adequate Assurance Stipulation shall continue to exist, shall continue to have the same priority, and shall continue to be deemed fully perfected without any need for SBC to file any UCC financing statements or take any other action, following the Effective Date to secure the Debtors' and Reorganized Debtors' payment obligations, pursuant and subject to the terms of the SBC Settlement Agreement and the SBC Adequate Assurance Stipulation, unless and until SBC agrees otherwise. The Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code.

13.     Pursuant to Section 5.03 of the Plan, entry of this Order shall constitute Bankruptcy Court approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123 and 1129 and other applicable law, effective as of the Effective Date, of the substantive consolidation of the Debtors for all purposes related to the Plan, including for purposes of voting, confirmation and distribution.

14.     The discharge, injunction, release and exculpation provisions contained in Sections 12.03 through 12.08 of the Plan are incorporated herein by reference as if set forth

herein in extenso, are approved in all respects and shall be effective as provided for therein. On the Effective Date, the provisions of Sections 12.03 through 12.08 of the Plan shall be valid, binding and effective in all respects, and are hereby approved as integral parts of the Plan as fair, equitable, reasonable and in the best interests of the Debtors, their estates, creditors, interest holders and other parties in interest in the Chapter 11 Cases, without the requirement of any further action by any party in interest in the Chapter 11 Cases.

15. Except with respect to and without vitiating any of the obligations under the Plan and the Plan Documents, neither the Debtors, the Reorganized Debtors, any Disbursing Agent nor any Exculpated Person shall have or incur any liability to any Person whatsoever, including, without limitation, any holder of any Claim or Equity Interest for any act or omission taken in good faith in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination or pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or property to be distributed pursuant to the Plan, or any contract, instrument, release, or other agreement or document created or entered into, pursuant to or in connection with the Plan, except (i) for any act or omission constituting fraud, gross negligence, willful misconduct, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts, and (ii) the foregoing shall not limit the liability of the professionals of the Debtors, the Reorganized Debtors, Leucadia, JPMorgan Chase, the Committee, or the Indenture Trustee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

16. The provisions respecting executory contracts and unexpired leases contained in Article 9 of the Plan are incorporated herein by reference as if set forth herein in extenso, are approved in all respects and shall be effective as provided for therein.

17.  Subject to the occurrence of the Effective Date, all executory contracts or unexpired leases that exist between the Debtors and any person or entity shall be <u>rejected</u> by the Debtors, as of the Effective Date, except for any executory contract or unexpired lease (i) that already have been assumed or rejected pursuant to an Order of the Bankruptcy Court entered prior to the Effective Date and for which the motion was filed prior to the Confirmation Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date, (iii) that is a Customer Contract or is with a person holding a Customer Claim or is an insurance policy, (iv) that is the subject of either the Verizon Settlement Agreement or the SBC Settlement Agreement in which case any such contract or lease shall be assumed or rejected as provided therein, or (v) that is designated specifically as a contract or lease to be assumed on Schedule 9.01A (executory contracts) or Schedule 9.01B (unexpired leases), if any, filed on or prior to the Confirmation Date, as may be amended pursuant to Section 9.01 of the Plan.

18.  Notwithstanding any provision contained herein or in the Plan to the contrary, no executory contracts or unexpired leases of the Debtors shall be deemed assumed, assumed and assigned, or rejected by operation of the Plan or this Order unless and until the Effective Date shall have occurred, and confirmation of the Plan shall not be deemed to have occurred with respect to such contracts and leases until the Effective Date.  Except as may be provided in the Verizon Settlement Agreement with respect to the treatment or rights of Verizon or the SBC Settlement Agreement with respect to the treatment or rights of SBC, as applicable, if the Effective Date does not occur, the deadline by which the Debtors may assume, assume and assign or reject any executory contracts or unexpired leases (including leases of nonresidential real property) shall be the later of (x) any deadline set forth in an extant order of this Court as if

no confirmation of a Plan has occurred in the Chapter 11 Cases and (y) 120 days after the date the Confirmation Hearing is concluded.

19. Except as may otherwise be agreed to by the Debtors or Reorganized Debtors, as the case may be, and the non-Debtor party to the contract or lease, and except as may be provided in the Verizon Settlement Agreement with respect to the treatment or rights of Verizon or the SBC Settlement Agreement with respect to the treatment or rights of SBC, as applicable, within thirty (30) days after the Effective Date, the Reorganized Debtors shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtors pursuant to the Plan, in accordance with Bankruptcy Code section 365(b). Except as may be provided in the Verizon Settlement Agreement with respect to the treatment or rights of Verizon or the SBC Settlement Agreement with respect to the treatment or rights of SBC, as applicable, subject to the last sentence of Section 9.05(b) of the Plan, all disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties.

20. Except as may be provided in the Verizon Settlement Agreement with respect to the treatment or rights of Verizon or the SBC Settlement Agreement with respect to the treatment or rights of SBC, as applicable, the Debtors or Reorganized Debtors shall, no later than thirty (30) days following the Effective Date, file and serve on parties to executory contracts and unexpired leases to be assumed pursuant to Section 9.01(v) of the Plan a notice (the "Cure Notice") listing the proposed cure amount (including amounts of compensation for actual pecuniary loss) to be paid in connection with the assumption of all executory contracts and unexpired leases to be assumed pursuant to Section 9.01(v) of the Plan. The non-Debtor parties

to such contracts and leases shall have until thirty (30) days following service of the Cure Notice to object in writing to the proposed cure and to propose an alternative cure. In the event that no objection is timely filed, the applicable party shall be deemed to have consented to the cure proposed by the Debtors (including amounts of compensation for actual pecuniary loss) and shall be forever enjoined and barred from seeking from the Debtors and Reorganized Debtors any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code. If an objection is timely filed with respect to the cure proposed by the Debtors for an executory contract or unexpired lease, the Bankruptcy Court shall hold a hearing to determine the amount of any disputed cure amount not settled by the parties. Notwithstanding anything otherwise to the contrary, at all times through the date that is thirty (30) days after the entry of a Final Order resolving and fixing the amount of a disputed cure amount, the Debtors and Reorganized Debtors shall be authorized to reject such executory contract or unexpired lease by notice to the non-debtor party to such executory contract or unexpired lease.

    21.  Except as may be provided in the Verizon Settlement Agreement or Verizon Adequate Assurance Stipulation with respect to the treatment of Verizon, or the SBC Settlement Agreement or SBC Adequate Assurance Stipulation with respect to the treatment of SBC, as applicable, Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 9.01 of the Plan must be filed with the Bankruptcy Court and served upon counsel for the Debtors (or, on and after the Effective Date, Reorganized Debtors) and counsel for the Committee, no later than thirty (30) days after the later of (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (ii) notice of entry of the Confirmation Order, and (iii) notice of an amendment to Schedule 9.01A or 9.01B. All such Claims not filed within such time will be forever barred from assertion against the Debtors and

their estates or the Reorganized Debtors and their property.

22. All Persons seeking an award by the Bankruptcy Court of a Fee Claim incurred through and including the Effective Date shall, unless otherwise ordered by the Bankruptcy Court: (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the date that is forty-five (45) days after the Effective Date; and (ii) if granted such award by the Bankruptcy Court, be paid in full in such amounts as are allowed by the Bankruptcy Court (a) not later than five (5) Business Days after the date that such Fee Claim becomes an Allowed Fee Claim, or as soon thereafter as is practicable or (b) upon such terms as may be mutually agreed between such holder of a Fee Claim and the Reorganized Debtors. Except with respect to the amount of such Fee Claims to be satisfied by the issuance of New Promissory Notes, the Reorganized Debtors shall reserve and segregate an amount equal to accrued but unpaid Fee Claims as of the Effective Date, which Cash shall be used, until all Allowed Fee Claims have been paid in full, solely for the payment of Allowed Fee Claims. Objections to Fee Claims, if any, must be filed and served on counsel for the Debtors, counsel for the Committee, the United States Trustee and the Person whose Fee Claim is subject to the objection no later than seventy-five days (75) after the Effective Date.

23. A hearing on applications for final allowance of Fee Claims for the period from the Petition Date through the Effective Date shall be held at a date and time to be scheduled by the Debtors or Reorganized Debtors with the Court. A notice of such hearing shall be served upon all of the parties that have filed notices of appearance in these cases as of the date hereof.

24. The Reorganized Debtors and their designees (including the Disbursing Agent) are authorized and empowered to make distributions in accordance with the Plan. Except

as may be provided in the Verizon Settlement Agreement with respect to the treatment or rights of Verizon or the SBC Settlement Agreement with respect to the treatment or rights of SBC, as applicable, pursuant to the Plan and consistent with Bankruptcy Rule 3021, all distributions under the Plan to holders of Allowed Claims shall be made to the holders of each Allowed Claim at the address of such holder as listed on the Schedules as of the Distribution Notification Date, unless the Debtors or, on or after the Effective Date, the Reorganized Debtors, have been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address reflected on the Schedules.

    25. Except as may be provided in the Verizon Settlement Agreement with respect to the treatment or rights of Verizon or the SBC Settlement Agreement with respect to the treatment or rights of SBC, as applicable, all Cash payments to be made by the Debtors to holders of Allowed Claims shall be made, at the Disbursing Agent's option, either by check drawn on a domestic bank and mailed by regular first class mail or wire transfer.

    26. On the Effective Date, the applicable Reorganized Debtors are authorized to issue the (a) New Senior Note, (b) the New Promissory Notes, (c) shares of New Common Stock, and (d) the Management Restricted Stock for distribution in accordance with the terms of the Plan, without the need for any further act or action under applicable law, regulation, order or rule.

    27. Except with respect to the Non-Exempt Noteholders, pursuant to section 1145 of the Bankruptcy Code, the offer and sale of the New ATX Securities and transactions in such securities are exempt from the registration and licensing requirements of Federal and State Securities Laws. Except with respect to the issuance of New ATX Securities to the Non-Exempt

Holders, pursuant to section 1145(c) of the Bankruptcy Code, the issuance of New ATX Securities under the Plan is a public offering. Subject to any transfer restrictions set forth in the applicable New ATX Security, the New ATX Securities may be resold and traded by any person that is not an Underwriter as unrestricted securities (and not subject to the restrictions on transfer, or registration or licensing requirements otherwise applicable under Federal and State Securities Laws).

28. Entry of this Order shall constitute approval of the Plan Documents and all exhibits to the Plan, the Plan and all transactions contemplated thereunder, including, but not limited to, the Verizon Settlement Agreement, the SBC Settlement Agreement, and the Exit Facility. The Reorganized Debtors are authorized to execute, deliver, file, assume and/or perform under each of the Plan Documents.

29. Without further order of the Court, each of the Debtors and Reorganized Debtors, is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents (including the Plan Documents), and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any of the New ATX Securities issued pursuant to the Plan.

30. Subject to the requirements of Section 15.09 of the Plan and the terms of the Verizon Settlement Agreement and the SBC Settlement Agreement, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims pursuant to the Plan, the Debtors, may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Documents, or this Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. In addition, subject to the requirements of Section 15.09 of the Plan, prior to

the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan and Plan Documents without further order or approval of the Bankruptcy Court; provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims nor adversely affect any provisions of the Verizon Settlement Agreement or SBC Settlement Agreement.

31.  Pursuant to the authority of this Court granted under Bankruptcy Rule 3020(e), this Order shall not be stayed until the expiration of ten (10) days after entry of this Order and shall be effective immediately upon its entry.

32.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Order, upon the occurrence of the Effective Date, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

33.  Pursuant to Section 15.07 of the Plan, the functions of the Committee shall terminate on the Effective Date, except that the Committee (i) may evaluate, object to if necessary, and appear at the hearing to consider applications for final allowances of compensation and reimbursement of expenses, including applications for compensation or reimbursement under Bankruptcy Code section 503, and support or prosecute any objections to such applications, if appropriate, and (ii) shall continue to exist for the purposes of monitoring the claims resolution process provided for in Section 7.07 of the Plan and shall have the right to seek Bankruptcy Court enforcement of the Reorganized Debtors' obligations set forth in Section 7.07 of the Plan. Pursuant to Section 15.07 of the Plan, reasonable post-Effective Date professional fees of the Committee for the services set forth in the preceding sentence shall be paid pursuant to Section 15.06 of the Plan.

34. To the extent this Order and/or the Plan conflicts with (i) the Disclosure Statement, (ii) any other agreement entered into between the Debtors and any party, or (iii) other orders of the Court, the Plan controls the Disclosure Statement and any such agreements or prior orders, and this Order controls the Plan. Notwithstanding the foregoing, to the extent there exists any inconsistency between the terms of the Plan or this Order and either of the Verizon Settlement Agreement or the SBC Settlement Agreement, the terms and provisions of such settlements shall control.

35. The Verizon Settlement Agreement hereby is approved in all respects pursuant to Bankruptcy Rule 9019(a) and sections 1123 and 1129 of the Bankruptcy Code.

36. The SBC Settlement Agreement hereby is approved in all respects pursuant to Bankruptcy Rule 9019(a) and sections 1123 and 1129 of the Bankruptcy Code.

37. Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and this Order shall be binding on (i) the Debtors, (ii) the Reorganized Debtors, (iii) all holders of Claims against and Equity Interests in the Debtors, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan, and (iv) each person acquiring property under the Plan.

38. If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order. Notwithstanding any such reversal, modification or vacatur of this Order, any

such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan and all documents related to the Plan and any amendments or modifications to any of the foregoing.

39.   The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect or enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan.

40.   The Plan shall be deemed to be substantially consummated on the Effective Date.

41.   On the Effective Date, any document, agreement, or instrument evidencing any Claim or Equity Interest, other than a Claim that is reinstated and rendered unimpaired under the Plan or Equity Interest held by a Debtor in any Subsidiary, shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests, as the case may be, shall be discharged; <u>provided, however,</u> that all such documents, agreements, instruments and rights shall continue in effect solely for the purposes of (i) allowing the holders of Allowed Claims to receive their distributions under the Plan, including, but not limited to, allowing the holders of Allowed Claims in respect of the Convertible Notes and the Indenture to receive their distributions under this Plan, (ii) allowing the Indenture Trustee to make the distributions to be made on account of the Convertible Notes, (iii) permitting the Indenture Trustee to assert its Indenture Trustee Charging Lien against the distributions to the holders of the Convertible Notes for payment of

the Indenture Trustee Fee, and (iv) such other purposes as may be expressly provided in the Plan.

42.    In the event one or more of the conditions to effectiveness of the Plan specified in Section 13.01 of the Plan have not occurred on or before one hundred twenty (120) days after the Confirmation Date or such later date as (i) may be agreed to by the Debtors and Leucadia and disclosed in a filing with the Bankruptcy Court or (ii) set by the Bankruptcy Court for cause shown, (w) the Confirmation Order shall be vacated, (x) no distributions under the Plan shall be made, (y) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (z) the Debtors' obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceeding involving the Debtors.

43.    This Court shall retain jurisdiction of the Chapter 11 Cases (a) pursuant to and for the purposes of section 105(a) and 1127 of the Bankruptcy Code, and (b) as set forth in Section 14.01 of the Plan, which is incorporated herein by reference as if set forth <u>in extenso</u>.

44.    The Debtors and/or their authorized agent(s) shall serve a notice of entry of this Order, as provided in Bankruptcy Rule 2002(f)(7), to all creditors and equity security holders of the Debtors within ten (10) business days after the Effective Date.

45. Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties: (a) the Reorganized Debtors and their counsel, (b) the Office of the United States Trustee, (c) counsel to SBC, Laurie Selber Silverstein, Esq., Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 North Market Street, Wilmington, Delaware 19801, Tel. (302) 984-6033, Fax. (302) 658-1192, (d) any party known to be directly affected by the relief sought; and (e) to the extent they impact holders of Class 6 Claims or Class 7 Claims, the Committee.

IT IS SO ORDERED this 13th day of April, 2005

/s/ Prudence Carter Beatty
THE HONORABLE PRUDENCE CARTER BEATTY
UNITED STATES BANKRUPTCY JUDGE