IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PAETEC COMMUNICATIONS, INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
|  | ) C.A.No. 1:05CV01485(RMC) |
| ATX COMMUNICATIONS, INC., f/k/a | ) |
| CORECOMM HOLDCO, INC., ATX | ) |
| TELECOMMUNICATIONS SERVICES, INC., | ) |
| ATX LICENSING INC.,CORECOMM | ) |
| COMMUNICATIONS, INC., and CORECOMM | ) |
| NEWCO, INC., | ) |
|  | ) |
| Defendants. | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |

**PLAINTIFF PAETEC COMMUNICATIONS, INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT ATX'S MOTION TO DISMISS**

Plaintiff PAETEC Communications, Inc. ( "PAETEC"), by
and through its undersigned attorney, respectfully submits
this Memorandum of Law in Opposition to the Defendant ATX's
Motion to Dismiss pursuant to Federal Rule of Civil
Procedure ("Fed.R.C.P.")12(b)(6).

2

## STATEMENT OF THE CASE

On July 25, 2005, PAETEC filed the instant Complaint against ATX. PAETEC alleges that ATX failed to pay PAETEC for providing, pursuant to federal and state tariffs, telecommunications exchange access services from 2000 and continuing through the present.

PAETEC's Complaint seeks relief on five Counts: (I) breach of contract (Complaint ¶¶22-24); (II) breach of tariffs/contracts (Complaint ¶¶25-31); (III) quantum meruit (Complaint ¶¶32-35); (IV)unjust enrichment (Complaint ¶¶36-39); and (V) breach of prior settlement agreement (Complaint ¶¶40-42).

On October 17, 2005, ATX filed a Motion to Dismiss the entire Complaint with prejudice pursuant to Fed.R.C.P. (12)(6) for failing to state a claim upon which relief can be granted. ATX also filed a Memorandum of Law in Support of Defendants' Motion to Dismiss ["ATX's Memorandum"]. [1]

In its Motion to Dismiss, ATX contends that: (1) every PAETEC claim asserted in the instant Complaint was discharged in the bankruptcy proceedings; (2) PAETEC, by

---

[1] ATX attached voluminous documents, not part of the Complaint, as Exhibits to its Memorandum of Law in Support of its Motion to Dismiss. ATX stated in its Memorandum that the Exhibits were publicly filed documents from ATX's bankruptcy proceedings, Case No. 04-10240, in the Bankruptcy Court of the Southern District of New York. ATX asserts that its "Relying upon the attached Exhibits does not convert this Motion to Dismiss to a motion for summary judgment under Rule 12(b)(6), as this Court may take judicial notice of the Bankruptcy case. ATX's Memorandum, page 5 at footnote 3.

order of the Bankruptcy Court and pursuant to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* is permanently enjoined from pursuing all of its instant claims; and (3) "to the extent [PAETEC] could seek redress, any claim should have been filed in the United States Bankruptcy in the Southern District of New York, which has jurisdiction over claims."

On January 18, 2006, PAETEC filed its Opposition to ATX's Motion to Dismiss ["PAETEC's Opposition"] and this Memorandum of Law in Opposition to ATX's Motion to Dismiss.

PAETEC opposes ATX's Motion to Dismiss because: (1) none of PAETEC's claims have been discharged in bankruptcy; (2) PAETEC has not been enjoined from pursuing its instant claims against ATX; and (3) as shown by Fed.R.C.P. 8.c, this Court has jurisdiction to decide whether ATX's affirmative defense of "discharge in bankruptcy" has merit. If the claims were not discharged, PAETEC's claims are properly before this Court.

## STATEMENT OF FACTS

### I. PAETEC's Claims for Non-Payment for Telecommunications Exchange Access Services Provided to ATX Are Based on Three Different Time Periods.

At all times relevant to this Complaint, Defendant ATX (and/or its predecessors in interest) provided interstate and intrastate long distance telecommunications services in

multiple states and in the District of Columbia. (Complaint ¶15) The times relevant to this Complaint began in 2000 and continue through the present date in 2006.

At all relevant times, PAETEC provided interstate and intrastate exchange access telecommunications services in multiple states and in the District of Columbia. (Complaint ¶¶14-16) PAETEC provided and continues to provide these exchange access services to ATX. PAETEC's claims at bar are based on ATX's failure to pay monthly invoices for such exchange access services.(Complaint ¶17)

The charges in PAETEC's invoices complied with all applicable tariffs and agreements (Complaint ¶18). ATX has just failed to pay. The amounts owed exceeded one hundred thirty-nine thousand nine hundred and ten dollars ($139,910) as of July 25, 2005, the date this action was commenced. PAETEC knew that it would continue to provide exchange access services to ATX after filing the instant Complaint and reserved its right to amend its Complaint to include these substantial, additional charges now owed by ATX (Complaint ¶¶20-21). PAETEC will amend its Complaint at an appropriate time.

Additionally, ATX owes PAETEC for late payment fees calculated at 1.5% per month per the applicable tariffs and agreements and for any fees and expenses, including attorneys' fees, in collecting or attempting to collect any

charges owed in accordance with the tariffs and agreements. (Complaint ¶19).

For the purpose of deciding ATX's Motion to Dismiss, the exchange access services PAETEC provided to ATX must be divided into three different time periods. The first period is after April 14, 2005, the date on which ATX's Plan of Reorganization became effective upon order of the Bankruptcy Court. This first time period is the "postconfirmation" period.

The second period of time relevant to PAETEC's claims is from January 15, 2004 to April 14, 2005, the "postpetition" period. On January 15, 2004, ATX filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code.

The third period of time is prior to January 15, 2004, the "prepetition" period. With respect to its "prepetition" claims, PAETEC seeks recovery only as a setoff, pursuant to 11 U.S.C. 553(a), to any counterclaims ATX may assert at bar for the prepetition period. Other than for setoff, PAETEC submits that its prepetition claims were discharged by the Bankruptcy Court.

PAETEC's Complaint does not allege any dispute with respect to the amounts owed to PAETEC. ATX's Motion to Dismiss, its Memorandum of Law, and the voluminous documents from the bankruptcy proceedings that ATX attached as Exhibits to its Memorandum do not mention any dispute about

the amounts owed to PAETEC. Accordingly, at least for the purpose of addressing ATX's Motion to Dismiss pursuant to Fed.R.C.P. 12(b)(6), there is no disagreement about the amounts ATX has failed to pay to PAETEC.

## II.  Relevant Provisions from Bankruptcy Orders and ATX's Bankruptcy Plan of Reorganization

On January 15, 2004, the same day that ATX filed its voluntary petition for bankruptcy, ATX also filed in the bankruptcy court, pursuant to 11 U.S.C. § 366, its MOTION FOR ORDER (I) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES; (II) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE TO DEBTORS; AND (III) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS BY UTILITY COMPANIES FOR ADDITIONAL ASSURANCES OF FUTURE PAYMENT (hereinafter "ATX's Section 366 Utility Services Motion").[2]

In its Section 366 Motion,[3] ATX stated:

---

[2] Section 366 provides:

> (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in

7

9. <u>The continuation of Utility Services</u> to the Debtors is <u>critical. Without</u> such services – <u>particularly</u> those provided by the <u>telecommunications utilities</u> – the Debtors could suffer a <u>catastrophic loss of revenue</u> that would immediately <u>imperil</u> their <u>restructuring</u> efforts and, <u>potentially</u>, their <u>survival</u>

23. …the administrative expense priority provided in sections 503(b) and 507(a)(1) of the Bankruptcy Code constitutes adequate assurance of payment, and no deposit or other security is required. <u>Virginia Elec. & Power Co. v. Caldor, Inc.</u>, 117 F. 3d 646,650 (2d Cir.1997)

24. …… <u>the Debtors [ATX] intend to continue to pay all undisputed postpetition</u> obligations, including <u>utility bills, as billed and when due.</u>

25. <u>The adequate assurance proposed herein</u>, which includes explicitly granting administrative expense priority to any undisputed postpetition utility obligations, will provide <u>more than sufficient protection</u> to the <u>Utility Companies.</u> (Underlining added)

---

interest and after notice and hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide assurance of payment.

[3] A copy of ATX's Section 366 Utility Services Motion is attached hereto as Exhibit A. ATX did not provide a copy of, nor even mention, its Section 366 Utility Services Motion in its Motion to Dismiss filing. On the other hand, ATX did attach seven other and very voluminous documents from its bankruptcy court docket.

On January 21, 2004, the Bankruptcy Court issued its ORDER (I) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES; (II) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE TO DEBTORS; AND (III) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS BY UTILITY COMPANIES FOR ADDITIONAL ASSURANCES OF FUTURE PAYMENT (hereinafter the "Section 366 Utility Services Order").[4]

In the Section 366 Utility Order, the Bankruptcy Court stated:

> 4. …… all Utility Companies that provide …electricity, telephone or similar services (the "Utility Services") to… Debtors…may not… refuse, or discontinue service to… Debtors.
>
> 5. The Debtors are authorized to pay, on a timely basis, and in accordance with their prepetition practices, all undisputed invoices with respect to postpetiton Utility Services rendered by Utility Companies.
>
> 12. Under section 503(b)(1)(A) of the Bankruptcy Code, any undisputed, unpaid postpetition utility charge shall constitute actual and necessary expenses of preserving the Debtors' estates, entitling the applicable Utility Company to an administrative expense priority claim under section 507(a)(1) of the Bankruptcy Code with

---

[4] A copy of the Bankruptcy Court's Section 366 Utility Services Order is attached hereto as Exhibit B. Like ATX's Section 366 Utility Motion, ATX did not provide a copy of, nor even mention, the Section 366 Utility Services Order in its Motion to Dismiss filing.

> respect to any undisputed, unpaid
> charges. (Underlining added)

During the postpetition period, PAETEC was a "utility company" within the meaning of both ATX's Section 366 Utility Services Motion and the Bankruptcy Court's Section 366 Utility Services Order. Relying on statements in ATX's Section 366 Motion and pursuant to the Bankruptcy Court's Section 366 Utility Order, PAETEC provided telecommunications exchange access services under tariff to ATX during the postpetition period. Also pursuant to the Section 366 Utility Order at ¶5, PAETEC invoiced ATX monthly for the exchange access services pursuant to the ordinary course of business and its "prepetition practices".

PAETEC's Complaint does not allege that there is any dispute between PAETEC and ATX with respect to the amounts owed to PAETEC for postpetition (or any other) services. ATX's Motion to Dismiss, its Memorandum of Law, and the voluminous documents from the bankruptcy proceedings, attached as Exhibits to ATX's Memorandum, do not mention any such dispute. Accordingly, at least for the purpose of addressing ATX's Motion to Dismiss pursuant to Fed.R.C.P. 12(b)(6), there is no disagreement about the amounts ATX has failed to pay to PAETEC.

On April 13, 2005, the Bankruptcy Court issued its JUDGMENT AND ORDER CONFIRMING DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (hereinafter the "Plan Confirmation Order")[5]. The Plan Confirmation Order stated, *inter alia,:*

> 2. ...the terms of the Plan … are an integral part of this Order and are incorporated herein by reference …
>
> 7. The Plan is hereby confirmed pursuant to section 1129 of the Bankruptcy Code.
>
> 25. ...all Cash payments to be made by the Debtors to holders of Allowed Claims shall be made…by check … or wire transfer.

Regarding *allowed* administrative expense claims and, in particular, *allowed* administrative expense claims representing utility services incurred by ATX in the ordinary course of business, ATX's Plan of Reorganization[6] provided in pertinent part:

> ARTICLE II
> TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS…
>
> 2.01 Administrative Expense Claims… each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to

---

[5] A copy of the Plan Confirmation Order is attached as Exhibit F to ATX's Memorandum in Support of its Motion to Dismiss.

[6] A copy of ATX's Plan of Bankruptcy Reorganization is attached as Exhibit E to ATX's Memorandum in Support of its Motion to Dismiss.

such Allowed Administrative Expense Claim…
provided, however, that <u>Allowed Administrative
Expense Claims representing liabilities
incurred in the ordinary course of business</u> by
the Debtors in Possession <u>shall be paid</u> in
full and performed by the Reorganized Debtors
<u>in the ordinary course of business</u> in
accordance with the terms and subject to the
conditions of any agreements governing,
instruments evidencing, or other documents
relating to such transactions. (Underlining
added)

Regarding tariff telecommunications access services
provided by PAETEC to ATX in the postpetition period, ATX's
Plan of Reorganization provided:

ARTICLE IX

<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

9.04 <u>Tariff Services</u> … all Access Providers
shall continue to provide… all Tariff
Services, specifically including without
limitation usage-sensitive switching and
access services. … <u>any Claim</u> against a Debtor
by an <u>Access Provider </u>for the provision of
<u>Tariff Services</u> to such Debtor <u>from</u> and
including the <u>Petition Date through</u> the
<u>Effective Date</u> shall be treated as an
Administrative Expense Claim.
(Underlining added)

Regarding which claims were "discharged", ATX's Plan of
Reorganization provided:

12.02 <u>Discharge of Claims. Except as provided
in the Plan, upon the Effective Date [of the
Plan], all existing Claims … shall
be….discharged….</u> and all holders of Claims…
shall be …<u>enjoined</u> from asserting against the
Reorganized Debtors… any other claim based upon

any …transaction… or other event…that arose …prior to the Effective Date..

     *    *    *

12.04 Injunction. Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all parties … who … hold or may hold Claims ….are permanently enjoined on and after the Effective Date, from (i) commencing … any action …with respect to any such Claim … provided, however, the foregoing shall not enjoin the right to enforce obligations of any party under the Plan…

## STANDARD OF REVIEW

Defendant ATX moves to dismiss in its entirety Plaintiff PaeTec's complaint, pursuant to Fed.R.C.P. 12(b) (6), for failure to state a claim upon which relief can be granted. Under Rule 12(b)(6) dismissal is appropriate "only where a defendant has shown beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Jacobsen v. Oliver, 201 F.Supp. 2d 93,98 (D.D.C.2002)(noting standard for motion to dismiss under Rule 12(b)(6))(quoting In re Swine Flu Immunization Products Liability Litigation, 880 F.2d 1439,1442 (D.C.Cir.1989)(other citation omitted; Brady v. Livingwood, 360 F.Supp.2d 94,99 (D.D.C.2004). When deciding a motion to dismiss under Fed.R.C.P. 12(b)(6), the court is required to construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable inferences drawn from well-pleaded factual allegations. Daisley v. Riggs

<u>Bank, N.A.</u>, 372 F.Supp. 2d 61, 66-67 (D.D.C.2005). As one leading authority explained, the Rule 12 Motion to Dismiss "is viewed with disfavor and is rarely granted." 5A Charles Alan Wright, et al., Federal Practice and Procedure § 1357, at 321.

**ARGUMENT**

**I. PAETEC'S CLAIMS FOR UTILITY SERVICES PROVIDED TO ATX *AFTER* THE EFFECTIVE DATE OF ATX'S BANKRUPTCY PLAN OF REORGANIZATION WERE *NOT* DISCHARGED AND STATE COGNIZABLE CLAIMS FOR RELIEF.**

Defendant ATX petitioned for voluntary bankruptcy on January 15, 2004. On April 13 and 14, 2005, the Bankruptcy Court confirmed ATX's Plan of Reorganization and the Plan of Reorganization became effective.

Since April 15, 2005 through the present, the postconfirmation period, PAETEC has provided to ATX exchange access services. Despite being billed monthly, ATX has not paid PAETEC for the postconfirmation services.

In its Motion to Dismiss, ATX contends that all of the claims[7] in PAETEC's Complaint, including the claims based on the postconfirmation period services, should be dismissed

---

[7] In its Memorandum of Law at ¶15, ATX states PAETEC's Complaint alleges breach of contract, unjust enrichment, and breach of the Settlement Agreement. ATX omits PAETEC's other two claims based on breach of tariff and quantum meruit, Counts II and III of the Complaint, respectively.

14

because they were discharged pursuant to Section 12.02[8] of the Plan of Reorganization as of April 14, 2005. This contention is plainly wrong.

There is no ground in the Plan of Reorganization, Section 1141(d) of the Bankruptcy Code, or anywhere else to support ATX's contention that the bankruptcy proceedings discharged ATX from paying for exchange access services provided to ATX during the postconfirmation period.

The Plan of Reorganization provides in pertinent part:

> 12.02 Discharge of Claims. Except as provided in the Plan, upon the Effective Date [April 14, 2005] all existing Claims… shall be… discharged … and all holders of Claims … shall be … enjoined from asserting against the Reorganized Debtors…any other or further Claim … based upon any act, … transaction, …that arose or occurred prior to the Effective Date…

> 12.04   Injunction. Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all parties … who … hold Claims … are permanently enjoined … after the Effective Date, from (i) commencing… any action … with respect to any such Claim …provided, however, foregoing shall not enjoin the right to enforce obligations of any party under the Plan … (Underlining added)

---

[8] In its Memorandum at 6, ATX contends that Section 12.03, addressing "Discharge of Debtors", is the keystone of their argument that the claims were discharged in bankruptcy. PAETEC asserts that Section 12.02, directly addressing "Discharge of Claims", is the operative provision of the plan which demonstrates the meritlessness of ATX's asserted grounds for dismissing the Complaint.
 Nevertheless, PAETEC also submits that, in any event, the facts and law as discussed herein lead to the same result with respect to both Sections 12.02 and 12.03. PAETEC's claims were not discharged in bankruptcy.

15

To the extent claims were discharged under the plan, they arose prior to its effective date, April 14, 2005. By definition, discharged claims do not arise after the prepetition and preconfirmation periods. To the extent PAETEC, or anyone else, has been enjoined from pursuing such claims, that injunction applies only to prepetition and preconfirmation claims. PAETEC's claims based on postconfirmation access services did not exist, nor did they arise, prior to confirmation date of the plan of reorganization. PAETEC had not yet provided the services on which the postconfirmation claims are based.

ATX does not explain in its Memorandum how postconfirmation claims could be discharged or enjoined from action by the Bankruptcy Court, either in the plan of bankruptcy reorganization or pursuant to Section 1141(d) of the Bankruptcy Code.[9] PAETEC's claims neither existed nor "arose" during the prepetition or preconfirmation periods.

Further debunking ATX's argument that postconfirmation claims were discharged by the Bankruptcy Court is well settled law. A bankruptcy court does not have jurisdiction over claims arising after the effective date of a confirmed plan of reorganization. <u>Service Decorating Co. v. Travelers</u>

---

[9] Section 1141(d)(1) states in pertinent part:

> Except as otherwise provided…, the confirmation of a plan – –
> (A) discharges the debtor from any debt that arose before the date of such confirmation…

Insur. Co., 105 B.R. 859,861(N.D.Ill.1989); In re Samoset Assoc., 654 F.2d 247,253(1st Cir.1981); 4B Collier on Bankruptcy, ¶70.94[18], at 1198(14th ed.1978)

ATX's Motion to Dismiss these postconfirmation claims is groundless.

**II. PAETEC'S CLAIMS FOR UTILITY SERVICES PROVIDED TO ATX AFTER ATX FILED ITS PETITION FOR BANKRUPTCY AND BEFORE THE EFFECTIVE DATE OF ITS PLAN OF REORGANIZATION WERE NOT DISCHARGED.**

ATX contends that monies owed by ATX to PAETEC for access services provided to ATX during the postpetition and preconfirmation period, January 15, 2004 to April 14, 2005, were discharged. However, the preconfirmation claims arising postpetition that were discharged, or not discharged, are specified in the Plan of Reorganization and related orders of the Bankruptcy Court. As explained below, the claims that were discharged do not include PAETEC's claims for allowed administrative expenses arising in the postpetition and preconfirmation period.

The exchange access services provided under tariff by PAETEC during the postpetition preconfirmation period were "utility services". The Bankruptcy Court unambiguously ordered that utility services provided to ATX were "allowed

administrative expense claims". These claims were never discharged. Further, the Bankruptcy Court ordered ATX to pay for utility services as bills became due and pursuant to the same terms and conditions applicable to their provision prior to the date, January 15, 2004, on which ATX petitioned for voluntary bankruptcy. PAETEC's invoices were to be paid pursuant to PaeTec's interstate and intrastate access charge tariffs. See Section 366 Utility Order ¶¶4,5, and 12.

More specifically, on January 15, 2004, in addition to its voluntary petition for bankruptcy, ATX filed in the Bankruptcy Court, pursuant to 11 U.S.C. § 366, ATX's Section 366 Utility Services Motion. In that motion,[10] ATX stated:

> 9. The continuation of Utility Services to the Debtors is critical. Without such services – particularly those provided by the telecommunications utilities – the Debtors could suffer a catastrophic loss of revenue that would immediately imperil their restructuring efforts and, potentially, their survival

> 23. …the administrative expense priority provided in sections 503(b) and 507(a)(1) of the Bankruptcy Code constitutes adequate assurance of payment, and no deposit or other security is required. Virginia Elec. & Power Co. v. Caldor, Inc., 117 F. 3d 646,650 (2d Cir.1997)

---

[10] A copy of ATX's Section 366 Utility Services Motion is attached hereto as Exhibit A. ATX did not provide a copy of, nor did ATX mention, its Section 366 Utility Services Motion in its Motion to Dismiss.

24. …… <u>the Debtors [ATX] intend to continue
to pay all undisputed postpetition</u>
obligations, including <u>utility bills, as
billed and when due.</u>

25. <u>The adequate assurance proposed herein</u>,
which includes explicitly granting
administrative expense priority to any
undisputed postpetition utility
obligations, will provide <u>more than
sufficient protection </u> to the <u>Utility
Companies.</u> (Underlining added)

On January 21, 2004, the Bankruptcy Court issued
its Section 366 Utility Order allowing ATX's Section 366
Motion for Utility Services.[11] That order stated in pertinent
part:

4. …… <u>all Utility Companies</u> that
provide …electricity, <u>telephone</u> or
similar services <u>(the "Utility
Services")</u> to… Debtors…may not… refuse,
or discontinue service to… Debtors.

5. The Debtors are <u>authorized to pay,
on a timely basis</u>, and in accordance
with their <u>prepetition practices</u>, all
<u>undisputed invoices</u> with respect to
<u>postpetition</u> Utility Services rendered
by Utility Companies.

12. Under section 503(b)(1)(A) of the
Bankruptcy Code, any <u>undisputed, unpaid
postpetition utility charge</u> shall
constitute <u>actual and necessary
expenses</u> of preserving the Debtors'

---

[11] Attached hereto as Exhibit B.

> estates, entitling the applicable Utility Company to an administrative expense <u>priority claim</u> under section <u>507(a)(1)</u> of the Bankruptcy Code with respect to any undisputed, unpaid charges.

The Section 366 Utility Services Order is unambiguous. *The Bankruptcy Court authorized payment of all undisputed utility bills, such as PAETEC's undisputed bills for exchange access services provided in the postpetition period. Further, the Bankruptcy Court ordered ATX to pay these utility bills on a timely basis, pursuant to ordinary prepetition practices, i.e., PAETEC's federal and state tariffs.* The Bankruptcy Court gave these invoices priority status as allowed administrative expense claims under Section 507(a)(1) of the Bankruptcy Code.[12]

PAETEC'S Complaint does not allege, nor may it be inferred, that any of the postpetition preconfirmation invoices were disputed. Indeed, no where in its Motion to

---

[12] The court in <u>In re Digital Impact, Inc</u>., 223 B.R.1,6(Bankr.N.D.Okla. 1998) explained that § 503(b)(1)(A) expenses, encompassing items like salary, rent, and *utilities* are

> …all those ongoing operating…expenses that would not likely be supplied on credit to a chapter 11 debtor without the protection of Section 507(a)'s priority scheme and Section 1129(a)(9)'s requirement that these administrative expenses be paid in cash and in full on the effective date of the plan.

20

Dismiss or in any other document submitted to this Court by ATX, does ATX represent that any invoice was disputed.

The Bankruptcy Court ordered ATX to pay PAETEC's undisputed invoices. ATX's contention that these postpetition and preconfirmation claims were discharged is groundless.[13] PAETEC's Complaint states a claim for relief.

**III. PAETEC RELIED ON ATX'S PRIOR INCONSISTENT STATEMENTS TO THE BANKRUPTCY COURT THAT ATX WOULD PAY PAETEC FOR POSTPETITION ACCESS SERVICES AND THAT SUCH PAYMENT WAS "AEDQUATELY ASSURED". ACCORDINGLY, ATX IS ESTOPPED AS A MATTER OF LAW FROM TRYING TO EVADE PAYMENT.**

---

[13] At bar, the Bankruptcy Court <u>expressly allowed</u> claims like PAETEC's undisputed utility invoices in the Section 366 Utility Order. Noteworthy is that bankruptcy courts have held that, even without such an order of allowance, due to the nature of some administrative expenses incurred in the normal course of the Debtor's doing business, they are not discharged by Section 1141(d)(1).

In <u>Nuttall Equipment Co. v. Frink America, Inc.</u>, 188 B.R. 732,737-738 (Bankr.W.D.N.Y.1995), the court held

> The plain language of § 1141(d) would produce a logical absurdity if not read in *para material* with the provisions of the Bankruptcy Code that implicitly recognize that certain allowable administrative expenses that are not specifically contemplated by the plan survive confirmation and are to be paid in the ordinary course.
>                    *       *       *
> Chapter 11 plans of reorganization and confirmation orders do not regularly contain language such as: "Administrative expenses that are ordinary costs of doing business, which are not barred by order, and for which no request for payment has been filed, and as to which there has been no order of allowance, will be paid as they fall due." Rather, § 1141(d)(1) does not discharge those debts because that language must be deemed implicit, of necessity, in every plan and order of confirmation.

It is well settled that any assertion of a legal right by a debtor in bankruptcy that is inconsistent with the debtor's prior words and acts is improper as a matter of law, where a non-debtor, such as PAETEC, relied upon such prior words or acts. <u>Bethlehem Steel Corp. v. BP Energy Company and Conoco</u>, 291 B.R. 260,265 (Bankr.S.D.N.Y.2003); <u>In re Ionosphere Clubs, Inc.</u>, 85 F.3d 992,999(2d Cir.1996); <u>Readco, Inc. v. Marine Midland Bank</u>, 81 F.3d 295,301(2d Cir.1996) ("Equitable estoppel is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought.")

In addition, where a party has "advanced an inconsistent factual position in a prior proceeding, and the prior inconsistent position was adopted by the first court in some manner" that party is judicially estopped from asserting the inconsistent position. *See* <u>Wight v. BankAmerica Corp.</u>, 219 F.3d 79, 89 (2d Cir.2000) *citing* <u>AXA Marine & Aviation Ins. (UK) Ltd. v. Sea Jet Indus. Inc.</u>, 84 F.3d 622, 628 (2d Cir.1996).

After ATX filed its petition for voluntary bankruptcy on January 15, 2004, PAETEC continued to provide ATX with telecommunications exchange access services for the entire postpetition preconfirmation period in reliance on ATX's statements in its Section 366 Utility Motion. These statements by ATX were also the grounds for the Bankruptcy Court's order prohibiting PAETEC and other utility suppliers from refusing to provide utility services despite ATX's being in bankruptcy proceedings.

More particularly, ATX represented in its Section 366 Utility Motion that ATX would "pay all undisputed postpetition obligations, including utility bills, as billed and when due." (ATX's Section 366 Utility Motion at ¶24) The uncontested fact before this Court in considering ATX's Motion to Dismiss is that PAETEC's invoices were undisputed.

ATX further stated in the Section 366 Utility Motion that "Without such services – particularly those provided by telecommunications utilities – [ATX] could suffer catastrophic loss of revenue that would immediately imperil their restructuring efforts and, potentially, survival." *Id.* at ¶9 In addition, ATX said in its motion that it had secured $5 million in a postpetition financing facility to give the utility providers adequate assurance, in lieu of cash deposits, that their invoices, given priority status as

administrative expense claims, will, in fact, be paid as rendered and due in the ordinary course of business and pursuant to prepetition terms and conditions. *Id.* at ¶24.

Based upon the representations by ATX in the Section 366 Utility Motion, the Bankruptcy Court in the Section 366 Utility Order prohibited PAETEC and other utilities from refusing service. Moreover, the Bankruptcy Court "authorized [ATX] to pay, on a timely basis, and in accordance with their prepetition practices, all undisputed invoices with respect to postpetiton Utility Services rendered by Utility Companies…[and that] any, undisputed, unpaid postpetition utility charges shall constitute actual and necessary expenses of preserving the Debtors' estates, entitling the applicable Utility Company to an administrative expense priority claim under section 507(a)(1) of the Bankruptcy Code with respect to any undisputed, unpaid charges." Section 366 Utility Order ¶12

PAETEC's invoices for postpetition and preconfirmation utility services are allowed administrative expense claims. ATX is estopped, as a matter of law, from contending it has a right not to pay these bills. Bethlehem Steel Corp. v. BP Energy Company and Conoco, 291 B.R. at 265.

24

**IV. PURSUANT TO 11 U.S.C. § 553(a), PAETEC'S PREPETITION CLAIMS ARE ENTITLED TO A SETOFF AGAINST ATX COUNTERCLAIMS FOR MONIES OWED FOR PREPETITION TRANSACTIONS.**

PAETEC's Complaint seeks a setoff pursuant to 11 U.S.C. § 553(a) for unpaid invoices for exchange access services provided to ATX in the prepetition period. Section 553(a) provides in pertinent part: "…this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case…"

More specifically, PAETEC filed a claim against ATX in the bankruptcy proceedings for approximately $70,000. PAETEC's claim was based on exchange access services provided to ATX prior to ATX's petitioning for voluntary bankruptcy. PAETEC filed a proof of claim pursuant to bankruptcy procedure. Ultimately, ATX paid PAETEC a few cents on the dollar for this claim and the balance of the $70,000 was discharged in the bankruptcy proceedings.

In the prepetition period, ATX may have provided some exchange access services to PAETEC. To the extent, if any, ATX counterclaims at bar and can demonstrate that PAETEC owes ATX for prepetiton services, PAETEC is entitled to set off the amount ATX owed PAETEC for prepetition services to

the extent that amount was discharged in the bankruptcy proceedings. <u>Peterson Distributing, Inc. v. Styler</u>, 82 F.3d 956,959(10th Cir.1996)

If ATX files no counterclaim based on prepetition transactions, PAETEC will withdraw its claim for setoff under Section 553(a).

**V. THE BANKRUPTCY COURT HAS NO JURISDICTION OVER PAETEC'S CLAIMS FOR SERVICES PROVIDED TO ATX AFTER APRIL 15, 2005, THE POSTCONFIRMATION PERIOD.**

ATX contends that this Court should dismiss claims arising from exchange access services provided after confirmation of the plan of bankruptcy reorganization. ATX argues jurisdiction over such claims is in the Bankruptcy Court. The ATX bankruptcy court does not have jurisdiction over such claims. ATX is plainly wrong.

It is well settled that a bankruptcy court does not have jurisdiction over claims arising after the effective date of a confirmed plan of reorganization. <u>Service Decorating Co. v. Travelers Insur. Co.</u>, 105 B.R. 859,861(N.D.Ill.1989); <u>In re Samoset Assoc.</u>, 654 F.2d 247,253(1st Cir.1981); 4B Collier on Bankruptcy, ¶70.94[18], at 1198(14th ed.1978) Accordingly, ATX's Motion to Dismiss these postconfirmation claims because jurisdiction lies in the Bankruptcy Court of

the Southern District of New York is groundless and should be denied.

**VI. THIS COURT HAS JURISDICTION TO DECIDE ATX'S AFFIRMATIVE DEFENSE OF "DISCHARGE IN BANKRUPTCY". PAETEC'S POSTPETITION AND PRECONFIRMATION CLAIMS WERE NOT DISCHARGED AND, ACCORDINGLY, ARE PROPERLY BEFORE THIS COURT ON THEIR MERITS.**

ATX erroneously contends that "even if [PAETEC] had a legal basis to assert its discharged claims, the Bankruptcy Court is the court which has jurisdiction to resolve those claims." (ATX's Memorandum at 8) This argument is transparent "bootstrapping" to avoid the obvious.

Under Fed.R.C.P. 8.c,[14] "discharge in bankruptcy" is an affirmative defense to be pleaded in and decided by this Court - in which PAETEC filed its Complaint. The case cited by ATX (ATX's Memorandum at 8), MCI Worldcom Network Services, Inc. v. Graphnet, Inc., 2005 WL 1116163(D.N.J.) at pages 9-13, stands for that very proposition.

The question before this Court is not whether the claims should be discharged. The question is whether the Bankruptcy Court's undisputed documents show that the claims were, or were not, actually discharged.

---

[14] F.R.C.P. 8.c provides in pertinent part: "AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively…discharge in bankruptcy…"

Based on the discussion above in Section II., PAETEC has shown that the Bankruptcy Court ordered that PAETEC's postpetition and preconfirmation claims were allowed administrative expense claims incurred in the ordinary course of business. The Bankruptcy Court further ruled that PAETEC's claims were not discharged in bankruptcy. Accordingly, the merits of PAETEC's postpetition and preconfirmation claims are properly before this Court. Nothing would be gained by involving the Bankruptcy Court other than "judicial inefficiency and greater expense to the parties". Peterson Distributing Inc. v. Styler, 82 F.3d at 963.

## VII. WHETHER OR NOT THE SETTLEMENT AGREEMENT IN COUNT V. OF PAETEC'S COMPLAINT WAS REJECTED IN BANKRUPTCY, ATX'S MOTION TO DISMISS MUST STILL BE DENIED.

Count V. of PAETEC's Complaint rests on a claim that ATX breached a Settlement Agreement. That Settlement Agreement resolved a complaint PAETEC filed against ATX in a federal court in Pennsylvania. PAETEC's complaint in Pennsylvania was similar to its instant Complaint in the District of Columbia.

Whether or not that Settlement Agreement is an executory contract rejected in ATX's bankruptcy proceedings, as ATX

asserts in its Memorandum, is immaterial to PAETEC's other four Counts for relief at bar. ATX's argument, that the entire Complaint be dismissed with prejudice because the Settlement Agreement may have been rejected in bankruptcy, is just erroneous on its face.

CONCLUSION

For the reasons set forth above, Plaintiff PaeTec respectfully requests that this Court deny Defendant ATX's Motion to Dismiss in its entirety.

Respectfully submitted,

_____/s/_____
Jeffrey J. Binder, Esq.
D.C. Bar #475821
The Watergate
2510 Virginia Avenue, NW
Washington, D.C.  20037
(202)965-0199
j.j.binder@verizon.net

Attorney for PAETEC
Communications, Inc.

Dated this 18th day of January, 2006

29

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of January, 2006, I caused a copy of PAETEC's MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ATX'S MOTION TO DISMISS to be served by first class U.S. mail postage prepaid upon:


Michael Hazzard
Deborah R. Israel
Michael R. Sklaire
Womble Carlyle Sandridge and Rice
1401 Eye Street, N.W.
Washington, D.C. 20005                              /s/

                                        **JEFFREY J. BINDER**